IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| SHERWIN ALUMINA, L.P., | § | |
| | § | |
|     Plaintiff/Counter-Defendant, | § | Civil Action |
| | § | No. C-06-183 |
| v. | § | |
| | § | |
| ALUCHEM, INC., | § | |
| | § | |
|     Defendant/Counter-Claimant. | § | |

_____

| | | |
|---|---|---|
| ALUCHEM, INC, | § | |
| | § | |
|     Plaintiff, | § | Civil Action |
| | § | No. C-06-210 |
| v. | § | |
| | § | |
| SHERWIN ALUMINA L.P., HOUSHANG | § | |
| SHAMS, MARK LIU, JERRY HOOPER, | § | |
| | § | |
|     Defendants. | § | |

**ORDER**

On this day came on to be considered the motion of Sherwin Alumina, L.P ("Sherwin Alumina") and Houshang Shams, Mark Liu and Jerry Hooper (together, the "Individual Defendants") to dismiss certain portions of AluChem, Inc.'s ("AluChem") First Amended Original Complaint, and in the alternative, motion for a more definite statement. (D.E. 96). For the reasons set forth below, Sherwin Alumina and the Individual Defendants' motion is DENIED in its entirety.

**I.  Jurisdiction**

The Court has diversity jurisdiction over this consolidated action pursuant to 28 U.S.C. § 1332(a).

II.  **<u>Factual Background</u>**[1]

In 2001, AluChem approached Sherwin Alumina regarding the possibility of Sherwin Alumina supplying AluChem with certain calcined, chemical grade alumina products.  Sherwin Alumina completed a number of trial runs producing the calcined alumina products using "kiln 8" at its Texas plant.  After Sherwin Alumina completed at least six trial runs, in 2002 Sherwin Alumina and AluChem entered into a Supply Agreement, whereby Sherwin Alumina agreed to provide AluChem with designated calcined alumina products for a certain price paid by AluChem (hereinafter, the "Supply Agreement").  The Supply Agreement is "evergreen," meaning that the Agreement continues in effect for subsequent two-year terms unless either party terminates the Agreement in writing twelve months prior to he end of the current contract term.  Per the terms of the Supply Agreement, if one party were to give written notice of termination of the Agreement, the Agreement would continue in force until the end of that calendar year and for the entire calendar year thereafter, at which point it would terminate.

Sherwin Alumina first produced the calcined alumina products for AluChem pursuant to a temporary permit from the Texas Commission on Environmental Quality ("TCEQ"), and AluChem received

---

[1]The Court details the extensive factual background of this case in the Court's Order No. 107, Order Granting AluChem, Inc.'s First Motion for Summary Judgment.  The Court directs the parties to Order No. 107 for a more detailed recitation of the facts in this action.

its permanent permit to produce the calcined alumina products in December, 2004. During every production run of calcined alumina products for AluChem, including the trial runs before the parties entered into the Supply Agreement, Sherwin Alumina experienced dust emissions from kiln 8 that had to be reported to TCEQ by a certain time.

After its first two-year term ending December 31, 2003, the Supply Agreement continued through another successive two-year term ending December 31, 2005. Since neither party had given notice of termination of the Supply Agreement, the Agreement then continued for another successive two-year term, to last from January 1, 2006 through December 31, 2007.

In March, 2006, Sherwin Alumina underwent a change in ownership and management. After the change in ownership, 49% of Sherwin Alumina was owned by Glencore, a foreign trading company, and 51% of the company was owned by China Minmetals, an entity owned by the People's Republic of China.

On April 26, 2006, Defendant Jerry Hooper of Sherwin Alumina sent Ed Butera of AluChem a letter stating that Sherwin Alumina was 'exercising its rights' under the force majeure clause contained in the Supply Agreement.[2] In the letter, Sherwin Alumina contended

---

[2]The Supply Agreement contains a force majeure clause, which states as follows:

> Seller shall not be liable for failure or delay in performance under this Order due in whole or in part to causes such as an act of God, strike, lockout or other

that it was declaring force majeure due to environmental concerns, specifically dust emissions. The letter stated that Sherwin Alumina intended to immediately cease production of calcined alumina products for AluChem.

Sherwin Alumina later agreed to "withdraw" its force majeure provision and complete a May, 2006 run of calcined alumina products for AluChem, albeit at a price of $60 additional dollars per ton. AluChem paid Sherwin Alumina an additional $480,000 as a result of the $60 per ton price increase for the May run.

The worldwide market for alumina, particularly calcined alumina, is currently very tight. There are very few calcined alumina suppliers in the world, and Sherwin Alumina is one of a very limited number of suppliers in North America. Without these calcined alumina products, AluChem may not be able to continue its business.

---

labor dispute, civil commotion, sabotage, fire, flood, explosion, acts of any government, unforeseen shortages or unavailability of fuel, power, transportation, raw materials or supplies, inability to obtain or delay in obtaining necessary equipment or governmental approvals, permits, licenses or allocations, and any other causes which are not within the reasonable control of Seller, whether or not of the kind specifically enumerated above. Under any such circumstances, Seller shall have the additional time needed to complete this Order and the right to allocate its available supply, in the manner it selects, to itself and amount any or all customers, including, but not limited to, it[s] subsidiaries and affiliates.

(Supply Agreement, Attach. 1, ¶ 7).

III. **Procedural Background**

On April 26, 2006, the same day it sent its letter to AluChem regarding force majeure, Sherwin Alumina filed a declaratory judgment action in this Court, requesting the Court to declare that (1) Sherwin Alumina is not in breach of contract for asserting force majeure; and (2) Sherwin Alumina has the right to terminate its contract with AluChem under the contract's force majeure clause. (D.E. 1, Original Complaint, ¶ 5).[3]

On May 3, 2006, AluChem filed a separate action against Sherwin Alumina in the United States District Court for the Southern District of Ohio, seeking a declaratory judgment that Sherwin Alumina's declaration of force majeure was illegitimate, and alleging causes of action for specific performance, breach of contract and breach of the covenant of good faith. (D.E. 1, Complaint, Case No. 06-210). On May 10, 2006, Judge Susan Dlott of the Southern District of Ohio transferred the case to this Court, pursuant to the "first-to-file" rule, and the case was assigned Case No. 06-210. (D.E. 9, 10, Case No. 06-210). On May 18, 2006, this Court consolidated the two actions, with Case No. 06-183 as the lead case and Case No. 06-210 as the member case. (D.E. 15).

---

[3]Sherwin Alumina has since amended its Original Complaint, and its current operative pleading is its Third Amended Complaint for Declaratory Relief, filed on February 20, 2007 (D.E. 83). Sherwin Alumina's Third Amended Complaint seeks additional declaratory relief, mainly related to the issue of pricing in Sherwin Alumina's contract with AluChem. (D.E. 83, Third Amended Complaint, ¶ 5).

On February 23, 2007, with leave of Court, AluChem filed its First Amended Original Complaint ("Amended Complaint"), adding claims of fraud and violations of the Texas Deceptive Trade Practices Act, Tex. Bus. & Com. Code, §§ 17.41, et seq., ("DTPA") against Sherwin Alumina, and adding claims for fraud and conspiracy to defraud against newly named Defendants Houshang Shams, Mark Liu and Jerry Hooper.  (D.E. 93).[4]  On March 1, 2007, Sherwin Alumina and the Individual Defendants filed their motion to dismiss AluChem's fraud and DTPA claims against Sherwin Alumina, and AluChem's fraud and conspiracy to defraud claims against the Individual Defendants.  (D.E. 96).  Sherwin Alumina and the Individual Defendants argue that AluChem did not plead its DTPA, fraud and conspiracy to defraud claims with enough specificity. AluChem filed its response to Defendants' motion to dismiss on March 20, 2007.  (D.E. 108).  AluChem maintains that it did plead its fraud, DTPA and conspiracy to defraud claims with enough specificity to satisfy the Federal Rules of Civil Procedure, and that its claims should not be dismissed.[5]

---

[4]Though the cases are now consolidated, AluChem's Amended Complaint amends the Complaint originally filed by AluChem in Case No. 06-210.

[5]Of note, AluChem has also filed a Counterclaim against Sherwin Alumina, and AluChem's current operative Amended Counterclaim asserts fraud and Texas DTPA claims against Sherwin Alumina.  (D.E. 98, Counterclaim filed with AluChem's Answer to Sherwin Alumina's Third Amended Complaint).

**IV.   Discussion**

    **A.   Motions to Dismiss**

"Motions to dismiss are viewed with disfavor and are rarely granted." Test Masters Educ. Servs., Inc. v. Singh, 428 F.3d 559, 570 (5th Cir. 2005); Lowrey v. Texas A&M Univ. Sys., 117 F.3d 242, 247 (5th Cir. 1997).  In analyzing a motion to dismiss, "[t]he complaint must be liberally construed in favor of the plaintiff, and all facts pleaded in the complaint must be taken as true." Beanal v. Freeport-McMoran, Inc., 197 F.3d 161, 164 (5th Cir. 1999).  The Court must also draw all reasonable inferences from those facts in the plaintiff's favor.  See Lovick v. Ritemoney Ltd., 378 F.3d 433, 437 (5th Cir. 2004).  In determining whether to grant a motion to dismiss, the court must not go outside the pleadings.  See Kennedy v. Chase Manhattan Bank, 369 F.3d 833, 839 (5th Cir. 2004).  Dismissal is proper only where, viewing the facts in the light most favorable to the plaintiff, "it appears beyond doubt that [the plaintiff] can prove no set of facts in support of [its] claim which would entitle [it] to relief." Campbell v. City of San Antonio, 43 F.3d 973, 975 (5th Cir. 1995); see also Scanlan v. Texas A&M Univ., 343 F.3d 533, 536 (5th Cir. 2003); Lowrey, 117 F.3d at 247 (stating that "[t]he question therefore is whether in the light most favorable to the plaintiff and with every doubt resolved in his behalf, the complaint states any valid claim for relief").

**B.      Texas Deceptive Trade Practices Act**

A claim under the Texas DTPA is covered by the notice pleading standard in Fed. R. Civ. P. 8(a), not the heightened pleading standard for fraud claims set forth in Fed. R. Civ. P. 9(b).[6] See Kennard v. Indianapolis Life Ins. Co., 420 F.Supp.2d 601, 609 (N.D. Tex. 2006) ("the court finds that Rule 9(b) should not be applied to Kennard's claims under the DTPA and Texas Insurance Code"); Metropolitan Life Ins. Co. v. Bialik, 2001 WL 322458, *4 n. 6 (N.D. Tex. 2001) (applying the liberal pleading standard of Rule 8(a) to a plaintiff's claim under the Texas DTPA); Bur-Cold Exp., Inc. v. Parker Hannifin Corp., 808 F.Supp. 553, 555 (S.D. Tex. 1992) (same); see also Infomart (India), Pvt., Ltd. v. Metrowerks Corp., 2005 WL 292433, *7 (N.D. Tex. 2005).

---

[6] Federal Rule of Civil Procedure 8(a), permitting notice pleading, requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  This requirement is designed to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Gen. Elec. Capital Corp. v. Posey, 415 F.3d 391, 396 (5th Cir. 2005) (internal quotations omitted); Conely v. Gibson, 355 U.S. 41, 47 (1957).  Rule 8(a) does not require a plaintiff to set out in detail the facts upon which he bases his claim.  See Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168 (1993).  Rather, "detail is properly left to the many devices of discovery, such as interrogatories, requests for admissions, depositions." Beard, Inc. v. Cameronics Tech. Corp., 120 F.R.D. 40, 41 (E.D. Tex. 1988).  A complaint may fail under Rule 8(a) in the following two ways: (1) where the complaint fails to "provide notice of the circumstances which give rise to the claim"; or (2) where the complaint fails "to set forth sufficient information to outline the elements of the claim or permit inferences to be drawn that these elements exist." Gen. Star Indem. Co. v. Vesta Fire Ins. Corp., 173 F.3d 946, 950 (5th Cir. 1999).

The elements of a DTPA action are as follows: (1) the plaintiff is a consumer; (2) the defendant engaged in false, misleading, or deceptive acts (as defined by the statute); and (3) these acts constituted a producing cause of the consumer's damages. See Doe v. Boys Club of Greater Dallas, 907 S.W.2d 472, 478 (Tex. 1995). As set forth below, AluChem successfully pleads the three elements of a Texas DTPA claim against Sherwin Alumina.

### 1. **DTPA Consumer**

First, AluChem successfully pleads that it is a "consumer" as defined by the DTPA. Whether a party is a consumer is a question of law. See Burroughs v. APS Int'l, Ltd., 93 S.W.3d 155, 163 (Tex. App.--Houston [14th Dist.] 2002). The DTPA defines a "consumer" as "an individual, partnership, corporation, this state, or a subdivision or agency of this state who seeks or acquires by purchase or lease, any goods or services, except that the term does not include a business consumer that has assets of $25 million or more, or that is owned or controlled by a corporation or entity with assets of $25 million or more." Tex. Bus. & Com. Code § 17.45(4). "To be a consumer, the plaintiff must have sought or acquired goods or services by purchase or lease, and those goods or services must form the basis of the complaint." Ortiz v. Collins, 203 S.W.3d 414, 424 (Tex. App.--Houston [14th Dist.] 2006); see also Bossier Chrysler Dodge II, Inc. v. Rauschenberg, 201 S.W.3d 787, 796 (Tex. App.--Waco 2006) ("To have standing then, a DTPA

plaintiff must be one who has purchased or leased goods or services, and the goods or services must form the basis of the plaintiff's complaint"); Hedley Feedlot, Inc. v. Weatherly Trust, 855 S.W.2d 826, 831 (Tex. App.--Amarillo 1993) (same).

In its Amended Complaint, AluChem pleads that it is a corporation that purchased goods, namely specialized calcined alumina products, from Sherwin Alumina. (Amended Complaint, ¶¶ 1, 18-22). AluChem purchased these goods from Sherwin Alumina pursuant to the Supply Agreement. (Id.). AluChem's Amended Complaint is based on Sherwin Alumina's April 26, 2006 declaration that it would no longer produce calcined alumina products for AluChem, and Sherwin Alumina's decision to charge AluChem $60 additional per ton for the May, 2006 production run. (Amended Complaint, ¶¶ 28-40, 47). Taking the facts in AluChem's Amended Complaint as true, AluChem sufficiently pleads that it is a consumer for purposes of the Texas DTPA.[7]

### 2. **False, Misleading or Deceptive Acts or Practices**

Next, AluChem successfully pleads the second element of a DTPA

---

[7] The Court notes that there is a dispute raised in Sherwin Alumina's pending motion for summary judgment (D.E. 86) as to whether AluChem does not qualify as a DTPA consumer because it may have over $25 million in assets. Sherwin Alumina and the Individual Defendants do not raise this point in their motion to dismiss, and the $25 million in assets issue is a factual dispute not appropriate for a Rule 12(b)(6) motion. Rather, "[t]he twenty-five million dollar exception is an affirmative defense which must be pled and proven by a DTPA defendant." Compusolve, Inc. v. Urban Engineering, Inc., 799 S.W.2d 374, 377 (Tex. App.-- Corpus Christi 1990).

claim, that the defendant engaged in false, misleading, or deceptive acts, as defined by the DTPA. Tex. Bus. & Com. Code § 17.50 defines false, misleading, or deceptive acts or practices as including (1) acts or practices specifically enumerated in Tex. Bus. & Com. Code § 17.46(b) that the consumer relied on to the consumer's detriment; and (2) "any unconscionable action or course of action by any person". AluChem maintains that Sherwin Alumina violated the DTPA by engaging in the practices specifically enumerated in Tex. Bus. & Com. Code §§ 17.46(b)(12) and 17.46(b)(24), and by engaging in an unconscionable action or course of action in violation of Section 17.50(a)(3). (Amended Complaint, ¶¶ 62-63).

Tex. Bus. & Com. Code §§ 17.46(b)(12) and 17.46(b)(24) define the following as false, misleading or deceptive acts or practices: (1) "representing that an agreement confers or involves rights, remedies or obligations which it does not have or involve, or which are prohibited by law"; and (2) "failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed[.]" Tex. Bus. & Com. Code §§ 17.46(b)(12) and (24). Taking AluChem's allegations as true, AluChem successfully pleads that Sherwin Alumina engaged in false, misleading or deceptive acts

or practices as defined above, and AluChem also successfully pleads that AluChem relied on such practices to AluChem's detriment. Specifically, AluChem pleads that Sherwin Alumina improperly asserted the Supply Agreement's force majeure clause, and that AluChem relied on Sherwin Alumina's illegitimate force majeure declaration by paying higher prices so as to obtain the required calcined alumina.[8]  (Amended Complaint, ¶¶ 37-47).

An unconscionable action or course of action is defined by the DTPA as "an act or practice which, to a consumer's detriment, takes advantage of the lack of knowledge, ability, experience, or capacity of the consumer to a grossly unfair degree."  Tex. Bus. & Com. Code §§ 17.45(5), 17.50(a); see also Danevang Farmers Co-op. Soc. v. Indeco Products, Inc., 2006 WL 2885058, *8 (Tex. App.-- Corpus Christi 2006).  "To prove an unconscionable action or course of action, a plaintiff must show that the defendant took advantage of the plaintiff's lack of knowledge and that the resulting unfairness was glaringly noticeable, flagrant, complete, and unmitigated."  Momentum Motor Cars, Ltd. v. Hauenstein, 2006 WL

---

[8]This can be classified as Sherwin Alumina failing to disclose information before entering into the Supply Agreement, namely that Sherwin Alumina considered dust emissions to be cause to declare force majeure under the Agreement (when Sherwin Alumina knew of the dust emissions problem before it entered into the contract).  AluChem's pleading can also be classified as Sherwin Alumina failing to disclose information that would have caused AluChem not to enter into the Supply Agreement -- namely, that Sherwin Alumina believed that the dust emission problem could excuse Sherwin Alumina from contract performance pursuant to the Agreement's force majeure clause.

2009086, *4 (Tex. App.--Houston [14th Dist.] 2006); see also Bradford v. Vento, 48 S.W.3d 749, 760 (Tex. 2001). In this case, AluChem pleads that Sherwin Alumina took advantage of AluChem's lack of capacity to obtain an alternative supply of calcined alumina, due to the very tight worldwide supply. (Id., ¶¶ 10-13, 16-17, 38-39). Specifically, AluChem's Amended Complaint describes in detail the limited number of worldwide calcined alumina suppliers, as well as how AluChem's business would be severely damaged if it could no longer obtain calcined alumina. (Id.).

Based on the above, taking AluChem's allegations as true, AluChem successfully pleads the second element of a Texas DTPA claim, that Sherwin Alumina engaged in false, misleading or deceptive acts or practices as defined by the DTPA.

### 3. Causation

Finally, AluChem successfully pleads the third element of a DTPA claim, that Sherwin Alumina's false, deceptive or misleading acts constituted a producing cause of AluChem's damages. Specifically, AluChem pleads that because Sherwin Alumina would no longer manufacture calcined alumina unless AluChem paid a price premium, AluChem was forced to pay extra-contractual prices to ensure that AluChem would continue to obtain calcined alumina. (Amended Complaint, ¶¶ 31-37, 47). AluChem contends that it was forced to pay over $400,000 more than the contractually agreed price due to Sherwin Alumina's actions. (Id., ¶ 47). Taking

AluChem's allegations as true, AluChem's Amended Complaint satisfies the third element of a Texas DTPA claim.

### C. **AluChem's Fraud Claim Against Sherwin Alumina and the Individual Defendants**

#### 1. **Elements of Fraud Claim under Texas Law**

The elements of a fraud claim are as follows: (1) the defendant must make a false material misrepresentation; (2) the defendant must have known the representation was false, or the defendant must have made the misrepresentation "recklessly as a positive assertion without any knowledge of its truth"; (3) the defendant must have intended to induce the plaintiff to act upon the representation; and (4) the plaintiff must have actually and justifiably relied upon the representation and suffered injury. Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co., 51 S.W.3d 573, 577 (Tex. 2001); see also Stephens v. Friendly Chevrolet, Ltd., 2005 WL 977834, *4 (Tex. App.--Dallas 2005) (same).

#### 2. **Rule 9(b) Heightened Standard for Fraud Claims**

Fed. R. Civ. P. 9(b) states as follows: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other conditions of mind of a person may be averred generally." When a plaintiff pleads fraud, the pleading must include details of the time, place, contents, and nature of activities that form the basis of the fraudulent conduct, and the plaintiff must identify

what was obtained through the fraud.  See <u>Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.</u>, 975 F.2d 1134, 1139 (5th Cir. 1992).

### 3. **<u>AluChem Successfully Pleads Its Fraud Claim</u>**

AluChem satisfies the Rule 9(b) standard for pleading its fraud claim against Sherwin Alumina and the Individual Defendants. Specifically, AluChem alleges that Sherwin Alumina made a false representation regarding its ability to continue to produce calcined alumina products under the Supply Agreement. AluChem provides extensive detail regarding this false representation: including the date it was made (April 26, 2006); the manner it was made (by letter); who made the representation (Defendant Jerry Hooper, after review and approval by Defendants Mark Liu and Houshang Shams); who received the representation (Ed Butera of AluChem); and specifically what was contained in the representation (AluChem's contention that it could no longer manufacture calcined alumina as a result of environmental concerns). (Amended Complaint, ¶¶ 29-33). AluChem satisfies the Rule 9(b) heightened standard for fraud claims with its detailed recitations regarding Sherwin Alumina's declaration of force majeure.

Taking AluChem's allegations as true, AluChem also successfully pleads the remaining elements of a fraud claim against Sherwin Alumina and the Individual Defendants: (1) AluChem pleads that the Defendants knew that the declaration of force majeure in the April 26, 2006 letter was false, or they made the

representation recklessly without knowledge of its truth; (2) that Defendants intended AluChem to act upon the representation (either to find an alternative supplier of calcined alumina or to pay more for calcined alumina from Sherwin Alumina); and (3) that AluChem relied on the false representation to its detriment (AluChem was forced to pay higher prices to cause Sherwin Alumina to "withdraw" their force majeure claim and produce calcined alumina).  (Amended Complaint, ¶¶ 31-37, 47, 66-67).  Accordingly, taking AluChem's allegations as true, AluChem successfully pleads a fraud claim against Sherwin Alumina and the Individual Defendants, even under the heightened pleading standard set forth in Rule 9(b).

### D. **AluChem's Conspiracy to Defraud Claim against the Individual Defendants**

"A conspiracy to defraud requires: (1) participants who have a common purpose supported by a concerted action to defraud; (2) each has the intent to accomplish the common purpose; and (3) each has the understanding that the other has that purpose." Guillet v. Fairfield Fin. Group, Inc., 1996 WL 496912, *5 (Tex. App.--Houston [1st Dist.] 1996); see also Bayou Terrace Inv. Corp. v. Lyles, 881 S.W.2d 810, 814 (Tex. App.--Houston [1st Dist.] 1994) (same); Schlumberger Well Surveying Corp. v. Nortex Oil & Gas. Gorp., 435 S.W.2d 854, 857 (Tex. 1969).

In this case, AluChem alleges that the three Individual Defendants worked together on the April 26, 2006 letter declaring

force majeure, with Jerry Hooper as the author and Mark Liu and Houshang Shams reviewing and approving the force majeure letter. (Amended Complaint, ¶ 31). AluChem asserts that the intent of this letter was to falsely declare force majeure and extract Sherwin Alumina from its contractual obligations, so that Sherwin Alumina could realize increased profit from metal grade alumina sales. (Id., ¶¶ 31-33). By alleging that the Individual Defendants together prepared and sent this false force majeure letter, AluChem asserts that the three knew that they were each working towards a common purpose: to extract Sherwin Alumina from its obligations under the Supply Agreement. (Id.).

Accordingly, taking AluChem's allegations as true, AluChem successfully pleads a conspiracy to defraud claim against the Individual Defendants: over two people with a common purpose (to extract Sherwin Alumina from the Supply Agreement), undertaking a concerted action to defraud (by preparing and sending the false majeure letter), each with the intent to accomplish the common purpose, and by working together, understanding the others to have the same intent.[9] (Id.); see also Guillet, 1996 WL 496912 at *5.

---

[9] The Individual Defendants are all employees of Sherwin Alumina. Houshang Shams is Sherwin Alumina's chief executive officer, Mark Liu is a Sherwin Alumina vice president, and Jerry Hooper is Sherwin Alumina's marketing and commercial manager. (Amended Complaint, ¶¶ 3-5). The Court notes that the only way that Dr. Shams, Mr. Liu and Mr. Hooper could have conspired to defraud AluChem would be if the three were acting primarily for their own personal gain. See Texas-Ohio Gas, Inc. v. Mecom, 28 S.W.3d 129, 138 n. 10 (Tex. App.--Texarkana 2000) ("We hold that corporate agents can conspire with one another even if they are

**V.    Conclusion**

For the reasons set forth above, the Court hereby DENIES Defendants' motion to dismiss certain portions of AluChem's Amended Complaint (D.E. 96).  AluChem's Texas DTPA and fraud claims against Sherwin Alumina, and AluChem's fraud and conspiracy to defraud claims against the Individual Defendants remain pending in this litigation.[10]

SIGNED and ENTERED this 23rd day of March, 2007.

_____
Janis Graham Jack
United States District Judge

---

purportedly acting as employees of the corporation, if they are in fact acting primarily for their own personal benefit."); see also Atlantic Richfield Co. v. Misty Prods., Inc., 820 S.W.2d 414, 421 (Tex. App.--Houston [14th Dist.] 1991).  However, while the Court notes this issue, it is not appropriate for a Rule 12(b)(6) motion, where the relevant inquiry is whether taking all of AluChem's allegations as true, "the complaint states any valid claim for relief".  Lowrey, 117 F.3d at 247.  As noted above, that question is answered in the affirmative, and the Court therefore denies the Individual Defendants' motion to dismiss the conspiracy to defraud claim.

[10]Because the Court denies Sherwin Alumina and the Individual Defendants' Rule 12(b)(6) motion to dismiss, the Court does not specifically address Sherwin Alumina and the Individual Defendants' alternative motion for a more definite statement pursuant to Federal Rule of Civil Procedure 12(e).