IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| ALUCHEM, INC., | § | |
| | § | |
| Plaintiff, | § | Civil Action |
| | § | No. C-06-183 |
| v. | § | No. C-06-210 |
| | § | |
| SHERWIN ALUMINA, L.P., HOUSHANG | § | |
| SHAMS, MARK LIU, JERRY HOOPER, | § | |
| | § | |
| Defendants. | § | |

**ORDER ADDRESSING ALUCHEM, INC's
SECOND MOTION FOR SUMMARY JUDGMENT**

On this day came on to be considered Plaintiff AluChem, Inc.'s ("AluChem") second motion for summary judgment (D.E. 87) in the above-styled consolidated action.[1] In the instant motion, AluChem seeks summary judgment on its fraud claim, and it also seeks summary judgment on its claim that Sherwin Alumina, L.P. ("Sherwin Alumina") breached the Supply Agreement by overcharging AluChem by $30 per ton for August-September, 2005.[2] For the reasons set forth below, AluChem's second motion for summary judgment is hereby

---

[1] On March 26, 2007, AluChem was re-designated as Plaintiff in this matter, and Sherwin Alumina was re-designated as the Defendant. (D.E. 116). This is AluChem's second summary judgment motion in this case. The Court issued an Order granting AluChem's first summary judgment motion on March 19, 2007 (D.E. 107, granting reinstated D.E. 16).

[2] In the motion before the Court, AluChem also reasserts the claims it made in its first motion for summary judgment (reinstated D.E. 16). AluChem's second motion for summary judgment was filed before the Court issued its March 19, 2007 Order granting AluChem's first motion for summary judgment (D.E. 107). Accordingly, the issues raised in AluChem's first motion for summary judgment have already been ruled upon and will not be addressed in the instant Order.

DENIED.

I. **<u>Jurisdiction</u>**

The Court has diversity jurisdiction over this consolidated action pursuant to 28 U.S.C. § 1332(a).

II. **<u>Factual Background</u>**

The Court sets forth the extensive factual background of this case in the Court's Order No. 107, Order Granting AluChem, Inc.'s First Motion for Summary Judgment (<u>Sherwin Alumina L.P. v. AluChem, Inc.</u>, 2007 WL 862151 (S.D. Tex. 2007)). The Court directs the parties to the above-referenced Order for a detailed recitation of the facts in this action. A brief factual summary is provided below.

In 2001, AluChem approached Sherwin Alumina regarding the possibility of Sherwin Alumina supplying AluChem with certain calcined, chemical grade alumina products. Sherwin Alumina completed a number of trial runs producing the calcined alumina products using "kiln 8" at its Texas plant. After Sherwin Alumina completed at least six trial runs, in 2002 Sherwin Alumina and AluChem entered into a Supply Agreement, whereby Sherwin Alumina agreed to provide AluChem with designated calcined alumina products for a certain price paid by AluChem (hereinafter, the "Supply Agreement"). The Supply Agreement is "evergreen," meaning that the Agreement continues in effect for subsequent two-year terms unless either party terminates the Agreement in writing twelve months

prior to the end of the current contract term. Per the terms of the Supply Agreement, if one party were to give written notice of termination of the Agreement, the Agreement would continue in force until the end of that calendar year and for the entire calendar year thereafter, at which point it would terminate.

Sherwin Alumina first produced calcined alumina products for AluChem pursuant to a temporary permit from the Texas Commission on Environmental Quality ("TCEQ"), and AluChem received its permanent permit to produce the calcined alumina products in December, 2004. During every production run of calcined alumina products for AluChem, including the trial runs before the parties entered into the Supply Agreement, Sherwin Alumina experienced dust emissions from kiln 8 that had to be reported to TCEQ by a certain time.

After its first two-year term ending December 31, 2003, the Supply Agreement continued through another successive two-year term ending December 31, 2005. Since neither party had given notice of termination of the Supply Agreement, the Agreement then continued for another successive two-year term, to last from January 1, 2006 through December 31, 2007.[3]

In March, 2006, Sherwin Alumina underwent a change in ownership and management. After the change in ownership, 49% of Sherwin Alumina was owned by Glencore, a foreign trading company,

---

[3] The issue of the date of termination of the Supply Agreement has been raised in this litigation. In its earlier Order dated March 19, 2007, the Court declared that the Supply Agreement terminates on December 31, 2007. (D.E. 107).

and 51% of the company was owned by China Minmetals, an entity owned by the People's Republic of China.

On April 26, 2006, Defendant Jerry Hooper of Sherwin Alumina sent Ed Butera of AluChem a letter stating that Sherwin Alumina was 'exercising its rights' under the force majeure clause contained in the Supply Agreement.[4]  In the letter, Sherwin Alumina contended that it was declaring force majeure due to environmental concerns, specifically dust emissions.  Mr. Hooper wrote that Sherwin Alumina was "now being fined" for violations of TCEQ regulations.  The letter stated that Sherwin Alumina intended to immediately cease production of calcined alumina products for AluChem.[5]

Sherwin Alumina later agreed to "withdraw" its force majeure provision and complete a May, 2006 run of calcined alumina products for AluChem, at a price of $60 additional dollars per ton.  AluChem paid Sherwin Alumina between $400,000 and $500,000 over the contract price as a result of the price increase for the May run.

The worldwide market for alumina, particularly calcined alumina, is currently very tight.  There are limited calcined

---

[4]The Supply Agreement contains a force majeure clause, which states as follows in relevant part: "Seller shall not be liable for failure or delay in performance under this Order due in whole or in part to ... causes which are not within the reasonable control of Seller, whether or not of the kind specifically enumerated [in the Agreement]."  (RX-2, Supply Agreement, Attach. 1, ¶ 7).

[5]In its March 19, 2007 Order, the Court found that there was no genuine issue of material fact that Sherwin Alumina was <u>not</u> entitled to declare force majeure under the terms of the Supply Agreement.  (D.E. 107).

alumina suppliers in the world, and Sherwin Alumina is one of two suppliers in the United States. Without these calcined alumina products, AluChem may not be able to continue its business.

### III. Procedural Background

A detailed recitation of the procedural background of this case is provided in the Court's March 19, 2007 Order granting AluChem's first motion for summary judgment. (D.E. 107). The Court refers the parties to its earlier Order for further information on the procedural background of the case. The procedural history of the instant motion for summary judgment is set forth below.

AluChem filed its second motion for summary judgment on February 20, 2007 (D.E. 87). In its motion, AluChem seeks (1) summary judgment on its fraud cause of action and an award of damages for its fraud claim; and (2) summary judgment on its claim that Sherwin Alumina breached the Supply Agreement by charging a $30 per ton price increase from August 8 through September 30, 2005, and a corresponding award of damages.[6] AluChem argues that it is entitled to summary judgment on its fraud claim "as a matter of law and undisputed fact", and that it is entitled to summary judgment on its breach of contract claim because AluChem never

---

[6] As noted above, in the motion before the Court, AluChem also re-asserted the claims it brought in its first motion for summary judgment (reinstated D.E. 16). The Court has since ruled on AluChem's first motion for summary judgment (D.E. 107), so AluChem's re-asserted claims are therefore MOOT.

agreed to a price increase for third quarter 2005. AluChem has offered evidence in support of its summary judgment motion, including internal email correspondence between Sherwin Alumina personnel, as well as a declaration of Ed Butera. See D.E. 87, attachments (Movant's Exhibits ("MX") 1-5).

On March 12, 2007, Sherwin Alumina filed its first response in opposition to AluChem's second motion for summary judgment (D.E. 101). After seeking leave of Court, Sherwin Alumina filed a supplemental response on April 9, 2007 (D.E. 133).[7] Sherwin Alumina argues that factual issues preclude summary judgment for AluChem on its fraud claim, and that there are factual issues as to whether AluChem agreed to the $30 per ton price increase starting in August, 2005.[8] Sherwin Alumina has offered evidence in support of its original and supplemental responses, including excerpts from the deposition testimony of Ron Zapletal and Ed Butera, an affidavit of Irene Perez, and email correspondence between Sherwin

---

[7] On March 29, 2007, Sherwin Alumina sought leave to file a supplemental brief and evidence in response to AluChem's second motion for summary judgment. (D.E. 119). Sherwin Alumina sought this relief because of depositions that occurred after the deadline for Sherwin Alumina to file its initial response to AluChem's motion. On April 2, 2007, the Court granted Sherwin Alumina's motion for leave, and gave Sherwin Alumina until April 9, 2007 to file its supplemental response (D.E. 124).

[8] Of note, Sherwin Alumina also argues that AluChem's damages figures are incorrect, that AluChem's alleged fraud damages should be $411,261.00, and that AluChem's alleged breach of contract damages should be $155,504. In its motion, AluChem had claimed fraud damages of $480,000 and breach of contract damages of $175,606. (AluChem does not appear to dispute Sherwin Alumina's lower damages figures).

Alumina and AluChem personnel. See D.E. 101, attachments (Respondent's Exhibits ("RX") 1-17) and D.E. 133, attachments (Respondent's Supplemental Exhibits ("Supp. RX") 1-5).

## IV. Discussion

### A. Summary Judgment Standard

Federal Rule of Civil Procedure 56 states that summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). The substantive law identifies which facts are material. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ellison v. Software Spectrum, Inc., 85 F.3d 187, 189 (5th Cir. 1996). A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; see also Judwin Props., Inc., v. U.S. Fire Ins. Co., 973 F.2d 432, 435 (5th Cir. 1992).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Wallace v. Texas Tech. Univ., 80 F.3d 1042, 1046-1047 (5th Cir. 1996). If the nonmovant bears the burden of proof on a claim, the moving

party may discharge its burden by showing that there is an absence of evidence to support the nonmovant's case.  See Celotex Corp., 477 U.S. at 325; Ocean Energy II, Inc. v. Alexander & Alexander, Inc., 868 F.2d 740, 747 (5th Cir. 1989).

Once the moving party has carried its burden, the nonmovant "may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing that there is a genuine issue for trial."  First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 270 (1968); see also Schaefer v. Gulf Coast Reg'l Blood Ctr., 10 F.3d 327, 330 (5th Cir. 1994) (stating that nonmoving party must "produce affirmative and specific facts" demonstrating a genuine issue).

When the parties have submitted evidence of conflicting facts, "the evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor."  Willis, 61 F.3d at 315.  Summary judgment is not appropriate unless, viewing the evidence in the light most favorable to the nonmoving party, no reasonable jury could return a verdict for that party.  See, e.g., Rubinstein v. Adm'rs of the Tulane Educ. Fund, 218 F.3d 392, 399 (5th Cir. 2000).

### B.   AluChem's Fraud Claim

In its Amended Complaint, AluChem brings a fraud claim against Sherwin Alumina, alleging that Sherwin Alumina defrauded AluChem "by improperly asserting a force majeure event" on April 26, 2006,

and by "extracting by duress a $60.00/net ton price premium for the May 2006 campaign run based upon false representations". (Amended Complaint, ¶ 66). For the reasons set forth below, AluChem is not entitled to summary judgment on its fraud cause of action.

### 1. Elements of Fraud Claim

The elements of a fraud claim are as follows: (1) the defendant must make a false material misrepresentation; (2) the defendant must have known the representation was false, or the defendant must have made the misrepresentation "recklessly as a positive assertion without any knowledge of its truth"; (3) the defendant must have intended to induce the plaintiff to act upon the representation; and (4) the plaintiff must have actually and justifiably relied upon the representation and suffered injury. Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co., 51 S.W.3d 573, 577 (Tex. 2001). As set forth below, factual disputes exist as to whether Sherwin Alumina's conduct satisfies the elements required for a fraud cause of action.

### 2. Factual Disputes

#### a. Factual Dispute re: Falsity of Representation

The first factual dispute regarding AluChem's fraud claim concerns Sherwin Alumina's representations in its April 26, 2006 letter. The Court has already declared that Sherwin Alumina was not entitled to declare force majeure under the terms of the Supply Agreement (D.E. 107). AluChem now focuses on Sherwin Alumina's

statement in its April 26, 2006 letter stating that Sherwin Alumina is "now being fined" for violations of TCEQ regulations. (RX-6, April 26, 2006 Letter). Specifically, in its summary judgment motion, AluChem argues that "the truth is that Sherwin **has never** been fined ... for anything relating to the manufacture of the AluChem Products." (Motion, p. 10) (emphasis in original). However, based on the summary judgment evidence submitted by both parties, there is a factual dispute as to whether Sherwin Alumina's statement regarding fines in the April 26, 2006 letter is actually a "false representation."

AluChem has submitted summary judgment evidence in the form of deposition testimony from Chester Ingersoll, Sherwin Alumina's Operations Manager. At Mr. Ingersoll's deposition, AluChem's counsel asked the deponent "How many fines are you aware of relating to processes in kiln 8?" Mr. Ingersoll replied "None." (D.E. 16, RX-6, Ingersoll Dep., 198:5-7). AluChem's counsel also asked Mr. Ingersoll, "Do you know of any fines [on kiln 8]?". Mr. Ingersoll responded "No, I don't know of any." (Id., 199:21-24).[9]

---

[9] In its motion, AluChem also points to the deposition testimony of Tom Ballou, Sherwin Alumina Environmental Manager, and Sandra Bailey, Sherwin Alumina Senior Production Engineer. However, Ms. Bailey's and Mr. Ballou's deposition testimony do not necessarily lend support to AluChem's assertion that Sherwin Alumina's statement regarding fines was a "false representation." With regard to Ms. Bailey's deposition, when asked "how many times has Sherwin Alumina been fined for matters relating to the manufacture of AluChem's product", Ms. Bailey responded "I don't know." (D.E. 16, MX-14, S. Bailey Dep., 30:22-25). Ms. Bailey also said that she had no knowledge of "present fines" for

Sherwin Alumina has submitted summary judgment evidence in the form of an Agreed Order from the TCEQ, assessing a civil penalty on Sherwin Alumina for $20,488.00. (RX-1(5), TCEQ Agreed Order). In the "Findings of Fact" section of the Agreed Order, TCEQ notes the following: (1) that Sherwin Alumina failed to "adequately report" the cause of a July 7, 2004 emissions event for kiln 8; and (2) that Sherwin Alumina "failed to prevent unauthorized emissions from [kiln 8] which occurred on" May 29 and July 7, 2004. (Id., p. 2). TCEQ found that these May 29 and July 7, 2004 emissions were "avoidable". (Id.).[10]

Based on the above, there exists a genuine issue of material

---

alleged TCEQ violations, as that was "not [her] department." (Id., 31:6-11). With regard to Mr. Ballou's deposition, AluChem never actually filed the excerpts of Mr. Ballou's deposition with the Court as evidence in D.E. 16 or the instant motion for summary judgment. However, AluChem did submit excerpts of Mr. Ballou's deposition in its response to Sherwin Alumina's motion for summary judgment (D.E. 103), and AluChem submitted this evidence partially on the subject of TCEQ fines. However, there is nothing in the provided excerpts of Mr. Ballou's deposition indicating that Sherwin Alumina was never fined for violations of TCEQ regulations. When asked directly if any of Sherwin Alumina's reports to TCEQ regarding kiln 8 had "resulted in a fine", Mr. Ballou responded "I believe we'll find some in the other enforcement matter that is pending. We may not have written a check yet, but we will." (D.E. 103, RX-6-7, Ballou Dep., 42:4-10).

[10]The Court notes that from the available evidence, it is not possible to determine whether these emissions were due to human error, or whether they were a result of some inherent quality of the calcined alumina manufacturing process. Rather, at the initial pretrial conference on June 23, 2006, Peter Bailey of Sherwin Alumina testified that the portions of any TCEQ fine that related to kiln 8 should be classified as "human error". (IPTC Tr., 79:22-25) ("[w]e have been fined on very few occasions, I think two occasions, and that is due to human error.").

fact as to the falsity of Sherwin Alumina's statement in its April 26, 2006 letter that it was "now being fined" for violations of TCEQ regulations. This factual issue precludes summary judgment for AluChem on its fraud cause of action.

### b. Factual Issue re: Reliance

Another factual issue exists as to whether AluChem actually and justifiably relied upon Sherwin Alumina's allegedly false representation. In its summary judgment motion, AluChem claims that it "relied upon Sherwin's representations and paid an additional $60.00 per ton in advance for the May 2006 campaign run resulting in damages of $480,000." (Motion, p. 11). In support of its claim, AluChem has submitted summary judgment evidence in the form of a declaration from Ed Butera, AluChem Vice President of Marketing and Sales, stating as follows: "I felt that AluChem had no choice other than to pay the $480,000 demanded by Sherwin. I paid the $480,000 under reservation of right. At the time, I believed Sherwin would use the advanced extra-contractual sum to offset the cost of the fines it represented to AluChem that it was incurring." (MX-5, Butera Decl., ¶ 8).[11]

Sherwin Alumina maintains that AluChem did not rely on Sherwin

---

[11] A May 2, 2006 email from Peter Bailey of Sherwin Alumina to Ron Zapletal of AluChem also supports AluChem's claim for reliance. Mr. Bailey wrote that Sherwin Alumina had essentially agreed to "withdraw [its] force majeure" and that the parties were now fighting only over the amount of AluChem's "additional price incentive." (Supp. RX-2(8), May 2, 2006 email from Peter Bailey to Ron Zapletal).

Alumina's force majeure declaration and the corresponding statement regarding TCEQ fines, because AluChem almost immediately filed suit against Sherwin Alumina, and AluChem stated unequivocally that it rejected Sherwin Alumina's declaration of force majeure. Sherwin Alumina also maintains that AluChem and Sherwin Alumina mutually negotiated the $60 per ton price increase, that it was not unilaterally forced on AluChem by virtue of Sherwin Alumina's declaration of force majeure.

Sherwin Alumina has submitted summary judgment evidence in support of its claims. First, Sherwin Alumina submitted a May 2, 2006 email from Ron Zapletal of AluChem to Peter Bailey of Sherwin Alumina, stating "[t]o the extent that I have not already done so, let me say that AluChem **rejects** Mr. Hooper's April 26 [force majeure] notice." (Supp. RX-2(4), May 1, 2006 email from Ron Zapletal to Peter Bailey) (emphasis added). Second, Sherwin Alumina submitted communications between Sherwin Alumina and AluChem personnel regarding negotiations over the price increase for the May, 2006 campaign run. Per these communications, Sherwin Alumina first requested a $100 per ton price increase, AluChem countered by offering $33 per ton, and the parties eventually settled on $60 per ton.[12] See Supp. RX-2(7), May 2, 2006 email from

---

[12]Sherwin Alumina contends that the $60 price increase was the result of a mutually agreeable negotiation, rather than a manifestation of AluChem's reliance on an allegedly false representation.

Ron Zapletal to Houshang Shams ("I apologize for not being persuasive enough to get AluChem board approval to the $100/NT price relief ... that you requested. I do believe however that our offer of $33/NT is quite fair in light of the circumstances"); Supp. RX-1, Butera Dep., 293:7-9 ("we [AluChem] offered $60 a ton after they [Sherwin Alumina] wanted a hundred. We countered with 33, we offered 60, they took it.").

Based on the above, there exists a genuine issue of material fact on the element of reliance, which also precludes summary judgment for AluChem on its fraud cause of action.[13]

### C. **AluChem's Claim for Damages for Breach of Contract in August, 2005**

In its second motion for summary judgment, AluChem claims that Sherwin Alumina breached the Supply Agreement by charging AluChem a $30 per ton price increase from August 8 to September 30, 2005. (Motion, pp. 5-6). AluChem does not dispute that it agreed to this $30 price increase for October through December, 2005, but it

---

[13]The Court notes that there is some dispute over the damages AluChem asserts for its fraud claim. Specifically, AluChem originally claimed $480,000 in damages ($60 per ton at 8,000 tons), and Sherwin Alumina countered that the actual figure is $411,261.00 (RX-3, Perez Aff., ¶ 10). AluChem appears not to contest the later $411,261.00 figure, since apparently Sherwin Alumina did not produce the full typical 8,000 tons for the May, 2006 campaign run. (Supp. RX-1, Butera Dep., 303:20-22 (Sherwin Alumina "didn't end up doing 8,000 tons. It comes out $411,000 I think was [the] exact number."). Regardless, the Court does not reach the issue of AluChem's damages for its fraud claim, since factual disputes preclude AluChem from being entitled to summary judgment on its fraud cause of action.

claims that it did not agree to the increase for the disputed August to September period. AluChem seeks summary judgment on its breach of contract claim, along with a corresponding award of damages. For the reasons set forth below, there are disputed factual issues that preclude summary judgment for AluChem on its breach of contract cause of action.[14]

### 1. Breach of Contract

"Under Texas law, the elements for breach of contract are: (1) the existence of a contract; (2) the creation of duties under the contract; (3) a breach of a duty by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." Amoco Chem. Co. v. Tex Tin Corp., 925 F.Supp. 1192, 1206 (S.D. Tex. 1996); see also Snyder v. Eanes Indep. Sch. Dist., 860 S.W.2d 692, 695 (Tex. App.--Austin 1993) ("When a cause of action is based on breach of contract, the plaintiff must show that a contract existed between the parties, that the contract created duties, that the defendant breached a duty under the contract, and that the plaintiff sustained damages as a result."); City of Corpus Christi v. Bayfront Associates, Ltd., 814 S.W.2d 98, 103 (Tex. App.--Corpus Christi 1991) (same).

In this case, the parties do not dispute the existence of the

---

[14]The Court notes that this Order is specifically limited to AluChem's claim that Sherwin Alumina breached the contract by charging a $30 per ton price increase for third quarter 2005. This Order does not address any other breach of contract claim AluChem may have previously asserted against Sherwin Alumina.

Supply Agreement, or that the Supply Agreement created certain duties for the respective parties. The dispute centers on whether Sherwin Alumina breached a duty under the Supply Agreement. AluChem claims that Sherwin Alumina did breach such a duty by unilaterally imposing a $30 price increase on AluChem for August 8 to September 30, 2005. Sherwin Alumina counters that AluChem agreed to the price increase, and therefore it was not a breach of contract for Sherwin Alumina to bill AluChem the additional $30 per ton.[15]

### 2. **Factual Dispute as to Whether AluChem Agreed to the $30 Per Ton Price Increase for Third Quarter 2005**

AluChem has submitted evidence in support of its claim that it did not agree to the $30 price increase for August-September, 2005, and that Sherwin Alumina therefore breached the Supply Agreement by imposing such an extra-contractual sum. Specifically, AluChem has submitted emails indicating that Sherwin Alumina classified the August-September $30 extra charge as a "premature price increase", and that AluChem requested a credit for the additional $30 per ton it paid during that period. See MX-3, April 4, 2006 email from

---

[15] As noted above, it is not disputed that the parties did agree to this $30 price increase for October, November and December, 2005. See Supp. RX-1, Butera Dep. (Mr. Butera testified that he negotiated the price increase with Sherwin Alumina for October, November and December 2005 on October 19, 2005). AluChem paid the $30 per ton increase for October-December, 2005 and has not brought any claims regarding the October-December $30 extra charge. The instant dispute only covers the August-September, 2005 period.

Jerry Hooper to Mark Liu ("AluChem is asking for $175,606 in credit ... I believe that we do owe them the credit in principle. I do understand the position of Sherwin losing money on the product; however, I believe that the commitment was made."); see also MX-2, February 13, 2006 email from Lew Patterson to Elizabeth Rodriguez and Irene Perez in the Sherwin Alumina billing department ("We have a price dispute with AluChem on the August and September [2005] shipments").

Further, an email submitted as summary judgment evidence by Sherwin Alumina supports AluChem's claim that it did not agree to the August-September, 2005 price increase. This email, dated August 5, 2005, was sent from Lew Patterson to Cindy Jette in Sherwin Alumina's billing department. Ms. Jette had asked Lew Patterson about August pricing for AluChem, and Mr. Patterson responded as follows: "Cindy, I have not spoken to AluChem yet and am on vacation until August 15. What I want you to do is increase their price by $30 per ST for SC-2 and SC-10". (RX-3(1), August 5, 2005 email from Lew Patterson to Cindy Jette). This email communication supports AluChem's assertion that the August-September $30 price increase was imposed without AluChem's prior agreement.

In contrast, Sherwin Alumina argues that although AluChem was not pleased with the $30 price increase starting in August 2005, AluChem agreed to the increase as of that date. Sherwin Alumina

has submitted summary judgment evidence to support its claim, in the form of affidavits from Defendant Jerry Hooper and from Lew Patterson, former President of Sherwin Alumina. See RX-7, Hooper Aff., ¶ 5 ("Sherwin discuss[ed] a price increase with AluChem in the 3rd Quarter of 2005 and raised the contract price $30 per ton for SC-2 and SC-10 and started billing the same on August 8, 2005 throughout the end of 2005. This price agreement was a verbal agreement between the parties."); RX-17, Patterson Aff., ¶ 4 (claiming that AluChem "didn't like the [$30 per ton] price increase but paid it" starting in August, 2005).[16]

Accordingly, based on the above, there is a factual dispute that precludes summary judgment for AluChem on its breach of contract claim regarding the August-September, 2005 price increase.[17]

---

[16] The Court notes that Sherwin Alumina couches several of its arguments regarding this issue in its rejected theory that the AQP provision of the Supply Agreement allowed for a quarterly renegotiation of the pricing section of the contract, rather than a one-time renegotiation if the price of natural gas exceeded $6.00 per mmBTU. The Court specifically rejected Sherwin Alumina's quarterly renegotiation theory in its Order dated March 19, 2007 (D.E. 107, p. 26 n. 28). The Court held that the AQP section of the contract allowed for a one-time renegotiation if the price of natural gas exceeded $6.00 per mmBTU. (Id.). The Court now specifically rejects any argument advanced by Sherwin Alumina that is based on Sherwin Alumina's rejected and erroneous reading of the AQP provision of the Supply Agreement. With regard to the instant motion for summary judgment, it is undisputed that the parties did agree to a $30 per ton price increase at some point. The Court limits this Order to the issue of when the parties agreed to that increase in price.

[17] Of note, there is a dispute over the amount of AluChem's claimed damages for its breach of contract claim. AluChem claims

**V.     Conclusion**

For the reasons set forth above, the Court hereby DENIES AluChem's second motion for summary judgment (D.E. 87).

SIGNED and ENTERED this 12th day of April, 2007.

_____
Janis Graham Jack
United States District Judge

---

damages of $175,606, but it has not submitted summary judgment evidence supporting this figure.  Sherwin Alumina claims that it has calculated AluChem's alleged damages at $155,504, and it has submitted summary judgment evidence to support this amount.  See RX-3, Perez Aff., ¶ 7; RX-3(2), Sherwin Alumina Invoices to AluChem; RX-16, Wheeler Aff., ¶¶ 6-8.  The Court notes this issue, but the Court does not reach the issue of the correct damages figure since factual disputes preclude summary judgment for AluChem on its breach of contract claim.